Catherine Ybarra (SBN 283360)
**SIRI & GLIMSTAD LLP**
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Tel: 213-297-3807
E:  cybarra@sirillp.com

Tyler J. Bean (*pro hac vice* forthcoming)
Tanner R. Hilton (*pro hac vice* forthcoming)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: tbean@sirillp.com
E: thilton@sirillp.com

***Counsel for Plaintiff and the Putative Class***

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| **Pooja Patel,** on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**Intuitive Surgical Operations, Inc.,**<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **NEGLIGENCE;**<br>2. **NEGLIGENCE *PER SE;***<br>3. **BREACH OF IMPLIED CONTRACT;**<br>4. **UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Pooja Patel ("Plaintiff"), individually and on behalf of all similarly situated persons ("Class Members"), allege the following against Intuitive Surgical Operations, Inc. ("Intuitive" or "Defendant") based upon personal knowledge with respect to themselves and on

1

information and belief derived from, among other things, investigation by Plaintiff's counsel and review of public documents as to all other matters:

## I.    INTRODUCTION

1.    Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard Plaintiff's and other similarly situated employees' personally identifiable information ("PII") and protected health information ("PHI") (the "Private Information"), from criminal hackers.

2.    Most, if not all, Class Members did not know that their Private Information had been compromised, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

3.    On March 12, 2026, Defendant disclosed that a breach occurred to its internal systems, which resulted in the compromise of employee data.[1]

4.    The Private Information compromised in the Data Breach contained highly sensitive employee data, representing a gold mine for data thieves.

5.    Armed with the Private Information accessed in the Data Breach (and a head start), data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

6.    Therefore, Plaintiff and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering, ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, the loss of the benefit

[1] https://www.intuitive.com/en-us/about-us/newsroom/Intuitive-statement-on-cybersecurity-incident (last visited March 20, 2026).

CLASS ACTION COMPLAINT

of their bargain, and potential out-of-pocket expenses to remedy or mitigate the effects of the Data Breach.

7.      Plaintiff brings this class action lawsuit to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained.

8.      The potential for improper disclosure and theft of Plaintiff's and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

9.      Upon information and belief, Defendant failed to properly implement security practices with regard to the computer network and systems that housed the Private Information. Had Defendant properly monitored their networks, it would have discovered the Breach sooner.

10.     Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct as the Private Information that Defendant collected and maintained is now in the hands of data thieves and other unauthorized third parties.

11.     Plaintiff seeks to remedy these harms on behalf of herself, and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

## II.      PARTIES

12.     Plaintiff Patel is, and at all times mentioned herein was, an individual citizen of the State of New York.

13.     Defendant Intuitive Surgical Operations, Inc. is a corporation with its principal place of business located at 1020 Kifer Road, Sunnyvale, California 94086.

## III.      JURISDICTION AND VENUE

14.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of Class Members is believed to be more than 100, many of whom, including Plaintiff, have different citizenship from Defendants, including Plaintiff. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

CLASS ACTION COMPLAINT

15.     The Court has general personal jurisdiction over Defendant because Defendant's principal place of business is located in this District.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because it is the District within which Defendant maintains its principal place of business.

17.     **Divisional Assignment**: San Jose is the proper division for this action pursuant to Civil L.R. 3-2(c) because Defendant's principal place of business is located in Sunnyvale, a city within Santa Clara County.

## IV.     FACTUAL ALLEGATIONS

*A. Defendant's Business and Collection of Plaintiff's and Class Members' Private Information*

18.     As a condition of receiving employment, Defendant require that their employees entrust it with highly sensitive personal and health information.

19.     Thus, due to the highly sensitive and personal nature of the information Defendant acquires and stores with respect to their employees, Defendant, upon information and belief, promises to, among other things: keep employees' Private Information private; comply with industry standards related to data security and the maintenance of their employees' Private Information; inform their employees of their legal duties relating to data security and comply with all federal and state laws protecting employees' Private Information; only use and release employees' Private Information for reasons that relate to the services it provides; and provide adequate notice to employees' if their Private Information is disclosed without authorization.

20.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties it owed to them and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure and exfiltration.

21.     Plaintiff and Class Members relied on Defendant to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this Information, which Defendant ultimately failed to do.

4

CLASS ACTION COMPLAINT

**B. The Data Breach and Defendant's Inadequate Notice to Plaintiff and Class Members**

22. On March 12, 2026, Defendant publicly admitted that a breach to its internal systems resulted in the compromise of employee data, including Plaintiff's and Class Members' Private Information.[2]

23. Through the Data Breach, the unauthorized cybercriminal(s) accessed a cache of highly sensitive Private Information.

24. Defendant had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

25. Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with their obligations to keep such Information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

26. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

27. Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

**C. The Healthcare Sector is Particularly Susceptible to Data Breaches**

28. Defendant was on notice that companies in the healthcare industry are susceptible targets for data breaches.

29. In August 2014, after a cyberattack on Community Health Systems, Inc., the Federal Bureau of Investigation ("FBI") warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PHI)."[3]

---

[2] https://www.intuitive.com/en-us/about-us/newsroom/Intuitive-statement-on-cybersecurity-incident (last visited March 19, 2026).

[3] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, Reuters (Aug. 2014), *available at* https://www.reuters.com/article/us-cybersecurity-healthcare-fbi/fbi-warns-

5

CLASS ACTION COMPLAINT

30.    The healthcare sector reported the second largest number of data breaches among all measured sectors in 2018, with the highest rate of exposure per breach.[4] In 2022, the largest growth in compromises occurred in the healthcare sector.[5]

31.    Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident … came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[6]

32.    Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.[7]

33.    Healthcare related breaches have continued to rapidly increase because electronic patient data is seen as a valuable asset. "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other

---

healthcare-firms-they-are-targeted-by-hackers-idUSKBN0GK24U20140820 (last visited March 19, 2026).

[4] Identity Theft Resource Center, *2018 End-of-Year Data Breach Report, available at*: https://www.idtheftcenter.org/wp-content/uploads/2019/01/ITRC_2018-EOY-BREACH-REPORT-KEY-FINDINGS.pdf (last visited March 19, 2026).

[5] Identity Theft Resource Center, *2022 End-of-Year Data Breach Report, available at*: https://www.idtheftcenter.org/wp-content/uploads/2023/01/ITRC_2022-Data-Breach-Report_Final-1.pdf (last visited March 19, 2026).

[6] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), *available at:* https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/ (last visited March 19, 2026).

[7] *Id.*

6

CLASS ACTION COMPLAINT

organization, including credit bureaus, have so much monetizable information stored in their data centers."[8]

34.    As a healthcare provider, Defendant knew, or should have known, the importance of safeguarding its patients' and employees' Private Information, including PHI, entrusted to it, and of the foreseeable consequences if such data were to be disclosed. These consequences include the significant costs that would be imposed on Defendant's patients and employees as a result of a breach. Defendant failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

### D.  *Defendant Failed to Comply with HIPAA*

35.    Title II of HIPAA contains what are known as the Administration Simplification provisions. *See* 42 U.S.C. §§ 1301, *et seq*. These provisions require that HHS create rules to streamline the standards for handling PHI similar to the data Defendant left unguarded and vulnerable to attack. The HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

36.    Defendant's Data Breach resulted from a combination of insufficiencies that indicate Defendant failed to comply with safeguards mandated by HIPAA regulations and industry standards. First, it can be inferred from Defendant's Data Breach that Defendant either failed to implement, or inadequately implemented, information security policies or procedures to protect Plaintiff's and Class Members' PHI.

37.    Plaintiff's and Class Members' Private Information compromised in the Data Breach included "protected health information" as defined by CFR § 160.103.

38.    45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information."

---

[8] Inside Digital Health, *How to Safeguard Hospital Data from Email Spoofing Attacks*, April 4, 2019, *available at*: https://www.chiefhealthcareexecutive.com/view/how-to-safeguard-hospital-data-from-email-spoofing-attacks (last visited March 19, 2026).

7

CLASS ACTION COMPLAINT

39.    45 CFR § 164.402 defines "unsecured protected health information" as "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"

40.    Plaintiff's and Class Members' Private Information included "unsecured protected health information" as defined by 45 CFR § 164.402.

41.    Plaintiff's and Class Members' unsecured PHI was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

42.    Based upon Defendant's publicly available information regarding the Data Breach, Plaintiff's and Class Members' unsecured PHI has been acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

43.    Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

44.    Upon information and belief, Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

45.    Upon information and belief, Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

46.    Upon information and belief, Plaintiff's and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach.

47.    Upon information and belief, Plaintiff's and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach.

CLASS ACTION COMPLAINT

48. It is reasonable to infer that Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

49. It should be rebuttably presumed that unsecured PHI acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

50. Given the occurrence of the Data Breach and impact such has had on victims' Private Information, it is reasonable for these victims, including Plaintiff and Class Members in this case, to believe that future harm (including medical identity theft) is real and imminent, and to take steps necessary to mitigate that risk of future harm.

51. In addition, Defendant's Data Breach could have been prevented if Defendant had implemented HIPAA mandated, industry standard policies and procedures for securely disposing of PHI when it was no longer necessary and/or had honored its obligations to its patients and employees.

52. Defendant's security failures also include, but are not limited to:

    a. Failing to maintain an adequate data security system to prevent data loss;

    b. Failing to mitigate the risks of a data breach and loss of data;

    c. Failing to ensure the confidentiality and integrity of electronic protected health information Defendant create, receive, maintain, and transmit in violation of 45 CFR 164.306(a)(1);

    d. Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

9

CLASS ACTION COMPLAINT

    e.  Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

    f.  Failing to identify and respond to suspected or known security incidents;

    g.  Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii);

    h.  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2);

    i.  Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3);

    j.  Failing to ensure compliance with HIPAA security standard rules by Defendant's workforce, in violation of 45 CFR 164.306(a)(94); and

    k.  Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq.*

53.    Because Defendant has failed to comply with HIPAA, while monetary relief may cure some of Plaintiff's and Class Members' injuries, injunctive relief is also necessary to ensure Defendant's approach to information security is adequate and appropriate going forward. Defendant still maintains the PHI and other highly sensitive PII of their current and former patients and employees, including Plaintiff and Class Members. Without the supervision of the Court through injunctive relief, Plaintiff's and Class Members' Private Information remains at risk of subsequent data breaches.

### E. Defendant Failed to Comply with FTC Guidelines

54.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices.

According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

55.    In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[9] . The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

56.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

57.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45 *et seq*. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

---

[9] *Protecting Personal Information: A Guide for Business,* FEDERAL TRADE COMMISSION (October 2016),    *available    at*    https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf  (last visited March 19, 2026).

CLASS ACTION COMPLAINT

58.     Such FTC enforcement actions include those against businesses that fail to adequately protect customer data, like Defendant here.  *See, e.g.*, *In the Matter of LabMD, Inc.*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

59.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses like Defendant of failing to use reasonable measures to protect Private Information they collect and maintain from consumers.  The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

60.     The FTC has also recognized that personal data is a new and valuable form of currency.  In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour stated that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable.  Data is currency. The larger the data set, the greater potential for analysis and profit."[10]

61.     As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

62.     Defendant was at all times fully aware of its obligation to protect the Private Information of its employees and patients yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so.

---

[10] FTC Commissioner Pamela Jones Harbour, *Remarks Before FTC Exploring Privacy Roundtable* (Dec.         7,          2009),         *transcript         available         at* https://www.ftc.gov/sites/default/files/documents/public_statements/remarks-ftc-exploring-privacy-roundtable/091207privacyroundtable.pdf  (last visited March 19, 2026).

CLASS ACTION COMPLAINT

**F.  *Defendant Failed to Comply with Industry Standards***

63.    As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

64.    The Center for Internet Security's (CIS) Critical Security Controls (CSC) recommends certain best practices to adequately secure data and prevent cybersecurity attacks, including Critical Security Controls of Inventory and Control of Enterprise Assets, Inventory and Control of Software Assets, Data Protection, Secure Configuration of Enterprise Assets and Software, Account Management, Access Control Management, Continuous Vulnerability Management, Audit Log Management, Email and Web Browser Protections, Malware Defenses, Data Recovery, Network Infrastructure Management, Network Monitoring and Defense, Security Awareness and Skills Training, Service Provider Management, Application Software Security, Incident Response Management, and Penetration Testing.[11]

65.    The National Institute of Standards and Technology ("NIST") also recommends certain practices to safeguard systems, such as the following:

a.  Control who logs on to your network and uses your computers and other devices.

b.  Use security software to protect data.

c.  Encrypt sensitive data, at rest and in transit.

d.  Conduct regular backups of data.

e.  Update security software regularly, automating those updates if possible.

f.  Have formal policies for safely disposing of electronic files and old devices.

g.  Train everyone who uses your computers, devices, and network

---

[11] *The 18 CIS Critical Security Controls*, CENTER FOR INTERNET SECURITY, https://www.cisecurity.org/controls/cis-controls-list  (last visited March 19, 2026).

13

CLASS ACTION COMPLAINT

about cybersecurity. You can help employees understand their personal risk in addition to their crucial role in the workplace.

66.    Further still, the United States Cybersecurity and Infrastructure Security Agency ("CISA") makes specific recommendations to organizations to guard against cybersecurity attacks, including (a) reducing the likelihood of a damaging cyber intrusion by validating that "remote access to the organization's network and privileged or administrative access requires multi-factor authentication, [e]nsur[ing] that software is up to date, prioritizing updates that address known exploited vulnerabilities identified by CISA[,] [c]onfirm[ing] that the organization's IT personnel have disabled all ports and protocols that are not essential for business purposes," and other steps; (b) taking steps to quickly detect a potential intrusion, including "[e]nsur[ing] that cybersecurity/IT personnel are focused on identifying and quickly assessing any unexpected or unusual network behavior [and] [e]nabl[ing] logging in order to better investigate issues or events[;] [c]onfirm[ing] that the organization's entire network is protected by antivirus/antimalware software and that signatures in these tools are updated," and (c) "[e]nsur[ing] that the organization is prepared to respond if an intrusion occurs," and other steps.[12]

67.    Defendant failed to implement industry-standard cybersecurity measures, including by failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are established frameworks for reasonable cybersecurity readiness, and by failing to comply with other industry standards for protecting Plaintiff's and Class Members' Private Information, resulting in the Data Breach.

---

[12] *Shields Up: Guidance for Organizations*, CYBERSECURITY AND INFRASTRUCTURE SECURITY AGENCY, https://www.cisa.gov/shields-guidance-organizations  (last visited March 19, 2026).

14

CLASS ACTION COMPLAINT

**G. Defendant Breached its Duty to Safeguard Plaintiff's and Class Members' Private Information**

68.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems, networks, and protocols adequately protected the Private Information of Class Members.

69.     Upon information and belief, Defendant breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard their computer systems and data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a.     Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

b.     Failing to adequately protect employees' Private Information;

c.     Failing to properly monitor their own data security systems for existing intrusions;

d.     Failing to sufficiently train its employees regarding the proper handling of its employees' Private Information;

e.     Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

f.     Failing to adhere to HIPAA and industry standards for cybersecurity as discussed above; and

g.     Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

15

CLASS ACTION COMPLAINT

70.    Upon information and belief, Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

71.    Had Defendant remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into their information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

72.    Accordingly, Plaintiff's and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft. Plaintiff and Class Members also lost the benefit of the bargain they made with Defendant.

**H. Plaintiff and Class Members are at a Significantly Increased and Substantial Risk of Fraud and Identity Theft as a Result of the Data Breach.**

73.    The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiff and Class Members suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[13] Exposure of highly sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

74.    Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity

---

[13] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited March 19, 2026).

16

CLASS ACTION COMPLAINT

thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

75.    Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

76.    In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

77.    Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiff's and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members.

78.    One such example of how malicious actors may compile Private Information is through the development of "Fullz" packages.

79.    Cybercriminals can cross-reference two sources of the Private Information compromised in the Data Breach to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

80.    The development of "Fullz" packages means that the stolen Private Information

CLASS ACTION COMPLAINT

from the Data Breach can easily be used to link and identify it to Plaintiff's and the proposed Class's phone numbers, email addresses, and other sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card or financial account numbers may not be included in the Private Information stolen in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class Members' stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

81.    For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[14] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

82.    Identity thieves can also use stolen personal information such as Social Security numbers and PHI for a variety of crimes, including credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house in the victim's name, receive medical services in the victim's name, and even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

---

[14]    *See    IdentityTheft.gov,*    Federal    Trade    Commission,    *available    at* https://www.identitytheft.gov/Steps (last visited February 18, 2026).

83.    The Identity Theft Resource Center documents the multitude of harms caused by fraudulent use of PII in its 2023 Consumer Impact Report.[15] After interviewing over 14,000 identity crime victims, researchers found that as a result of the criminal misuse of their PII:

- 77-percent experienced financial-related problems;

- 29-percent experienced financial losses exceeding $10,000;

- 40-percent were unable to pay bills;

- 28-percent were turned down for credit or loans;

- 37-percent became indebted;

- 87-percent experienced feelings of anxiety;

- 67-percent experienced difficulty sleeping; and

- 51-percent suffered from panic of anxiety attacks.[16]

84.    PHI is also especially valuable to identity thieves.  As the FTC recognizes, identity thieves can use PHI to commit an array of crimes, including identity theft and medical and financial fraud.[17]

85.    Indeed, a robust cyber black market exists in which criminals openly post stolen PHI on multiple underground Internet websites, commonly referred to as the dark web.

86.    While credit card information and associated PII can sell for as little as $1-$2 on the black market, protected health information can sell for as much as $363 according to the Infosec Institute.[18]

---

[15] *2023 Consumer Impact Report* (Jan. 2024), IDENTITY THEFT RESOURCE CENTER, *available online at*:  https://www.idtheftcenter.org/wp-content/uploads/2023/08/ITRC_2023-Consumer-Impact-Report_Final-1.pdf  (last visited March 19, 2026).

[16] *Id* at pp 21-25.
[17]    Federal Trade Commission, *Warning Signs of Identity Theft, available at*: https://consumer.ftc.gov/articles/what-know-about-identity-theft (last visited February 18, 2026).
[18]*Data Breaches: In the Healthcare Sector,* CENTER FOR INTERNET SECURITY, *available at*: https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector    (last visited March 19, 2026).

CLASS ACTION COMPLAINT

87.    PHI is particularly valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

88.    Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[19]

89.    The ramifications of Defendant's failure to keep their employees' Private Information secure are long lasting and severe. Once it is stolen, fraudulent use of such and damage to victims may continue for years.

90.    Here, sensitive Private Information, including Social Security numbers, was stolen in the Data Breach. The value of both PII and PHI is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities notwithstanding possible heavy prison sentences illustrates beyond a doubt that the Private Information compromised here has considerable market value.

91.    It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or PHI is stolen and when it is misused. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[20]

---

[19] Michael Ollove, "*The Rise of Medical Identity Theft in Healthcare*," KAISER HEALTH NEWS (Feb. 7, 2014), *available at*: https://kffhealthnews.org/news/rise-of-indentity-theft/ (last visited March 19, 2026).

[20] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. GOVERNMENT ACCOUNTABILITY OFFICE (June 2007), *available at* https://www.gao.gov/assets/gao-07-737.pdf (last visited March 19, 2026).

20

CLASS ACTION COMPLAINT

[L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

92.    PII and PHI are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the dark web for years.

93.    As a result, Plaintiff and Class Members are at an increased risk of fraud and identity theft, including medical identity theft, for many years into the future. Thus, Plaintiff and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

## I.    *Plaintiff's and Class Members' Damages*

*Plaintiff Pooja Patel's Experience*

94.    Plaintiff Patel is a former employee of Defendant.

95.    When Plaintiff Patel became an employee, Defendant required Plaintiff Patel to provide substantial amounts of her Private Information.

96.    Upon information and belief, Plaintiff Patel's Private Information was subject to the Data Breach because the Data Breach included the compromise of employee data and Plaintiff was a former employee of Defendant.

97.    Plaintiff Patel would not have provided her Private Information to Defendant had Defendant timely disclosed that its systems lacked adequate computer and data security practices to safeguard its employees' personal and health information from theft, and that those systems were subject to a data breach.

98.    Upon information and belief, Plaintiff Patel suffered actual injury in the form of having her Private Information compromised and/or stolen as a result of the Data Breach.

21

CLASS ACTION COMPLAINT

99. Plaintiff Patel suffered actual injury in the form of damages to and diminution in the value of her Private Information – a form of intangible property that Plaintiff Patel entrusted to Defendant for the purpose of receiving healthcare services from Defendant and which was compromised in, and as a result of, the Data Breach.

100. Plaintiff Patel suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by her Private Information being placed in the hands of criminals.

101. Plaintiff Patel has a continuing interest in ensuring that her Private Information, which remains in the possession of Defendant, is protected and safeguarded from future breaches. This interest is particularly acute, as Defendant's systems have already been shown to be susceptible to compromise and are subject to further attack so long as Defendant fails to undertake the necessary and appropriate security and training measures to protect their customers' and patients' and employees' Private Information

102. As a result of the Data Breach, Plaintiff Patel has suffered anxiety as a result of the release of her Private Information, which she believed would be protected from unauthorized access and disclosure. These feelings include anxiety about unauthorized parties viewing, selling, and/or using her Private Information for purposes of committing cyber and other crimes against her including, but not limited to, fraud and identity theft. Plaintiff Patel is very concerned about this increased, substantial, and continuing risk, as well as the consequences that identity theft and fraud resulting from the Data Breach would have on her life.

103. Plaintiff Patel also suffered actual injury from having her Private Information compromised as a result of the Data Breach in the form of (a) damage to and diminution in the value of her Private Information, a form of property that Defendant obtained from Plaintiff Patel; (b) violation of her privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud she now faces.

104. Upon information and belief, Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

CLASS ACTION COMPLAINT

105. Plaintiff and Class Members entrusted their Private Information to Defendant in order to receive Defendant's services.

106. Upon information and belief, Plaintiff's and Class Members' Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendant's inadequate data security practices.

107. As a direct and proximate result of Defendant's actions and omissions, Plaintiff and Class Members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, having medical services billed in their names, loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of identity theft.

108. Plaintiff and Class Members may incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

109. Plaintiff and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiff and Class Members.

110. The Private Information maintained by and stolen from Defendant's systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiff and Class Members, which can also be used to carry out targeted fraudulent schemes against Plaintiff and Class Members.

111. Plaintiff and Class Members also lost the benefit of the bargain they made with Defendant. Plaintiff and Class Members overpaid for services that were intended to be accompanied by adequate data security but were not. Indeed, part of the price Plaintiff and Class Members paid to Defendant was intended to be used by Defendant to fund adequate security of Defendant's system and protect Plaintiff's and Class Members' Private Information. Thus, Plaintiff and the Class did not receive the benefit of the bargain.

CLASS ACTION COMPLAINT

112.    Upon information and belief, Plaintiff and Class Members also suffered a loss of value of their PII and PHI when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases. An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[21] In fact, consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $50 a year.[22]

113.    As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is apparently readily available to others, and the rarity of the Private Information has been destroyed because it is no longer only held by Plaintiff and the Class Members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiff and the Class Members, thereby causing additional loss of value.

114.    Finally, Plaintiff and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

115.    Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of Defendant, is protected from future breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing highly sensitive personal and health information of their patients and employees is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

---

[21] *See How Data Brokers Profit from the Data We Create*, THE QUANTUM RECORD, https://thequantumrecord.com/blog/data-brokers-profit-from-our-data/ (last visited March 19, 2026).

[22] *Frequently Asked Questions,* NIELSEN COMPUTER & MOBILE PANEL, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited March 19, 2026).

CLASS ACTION COMPLAINT

116.    As a direct and proximate result of Defendant's actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

### V.    CLASS ACTION ALLEGATIONS

117.    Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

118.    Specifically, Plaintiff proposes the following Nationwide Class subject to amendment as appropriate:

**Nationwide Class**

All individuals in the United States who had Private Information

impacted as a result of the Data Breach.

119.    Excluded from the Class are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as their officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

120.    Plaintiff reserves the right to modify or amend the definitions of the proposed Nationwide Class before the Court determines whether certification is appropriate.

121.    Numerosity. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of potentially thousands of Defendant's patients and employees whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

25

CLASS ACTION COMPLAINT

122. <u>Commonality</u>. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a. Whether Defendant engaged in the conduct alleged herein;

b. Whether Defendant's conduct violated the FTCA, HIPAA, and/or the California Consumer Privacy Act;

c. When Defendant learned of the Data Breach

d. Whether Defendant's response to the Data Breach was adequate;

e. Whether Defendant unlawfully lost or disclosed Plaintiff's and Class Members' Private Information;

f. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

g. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

h. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

i. Whether Defendant owed a duty to Class Members to safeguard their Private Information;

j. Whether Defendant breached their duty to Class Members to safeguard their Private Information;

k. Whether hackers obtained Class Members' Private Information via the Data Breach;

l. Whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class Members;

m. Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

26

CLASS ACTION COMPLAINT

n.  Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

o.  What damages Plaintiff and Class Members suffered as a result of Defendant's misconduct;

p.  Whether Defendant's conduct was negligent;

q.  Whether Defendant's conduct was *per se* negligent;

r.  Whether Defendant were unjustly enriched;

s.  Whether Plaintiff and Class Members are entitled to actual and/or statutory damages;

t.  Whether Plaintiff and Class Members are entitled to credit or identity monitoring and monetary relief; and

u.  Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

123.  <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class Members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class Members arise from the same operative facts and are based on the same legal theories.

124.  <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

125.  <u>Predominance</u>. Defendant engaged in a common course of conduct toward Plaintiff and Class Members in that all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues

CLASS ACTION COMPLAINT

arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

126.    Superiority. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

127.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach.

## VI.    CLAIMS FOR RELIEF

### COUNT I

### NEGLIGENCE

### (ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

128.    Plaintiff restates and realleges all of the allegations stated above as if fully set forth herein.

129.    Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in

28

safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

130. Defendant's duty also included a responsibility to implement processes by which it could detect and analyze a breach of their security systems quickly and to give prompt notice to those affected in the case of a cyberattack.

131. Defendant knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class Members and the importance of adequate security. Defendant was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

132. Defendant owed a duty of care to Plaintiff and Class Members whose Private Information was entrusted to it. Defendant's duties included, but were not limited to, the following:

    a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in their possession;

    b. To protect patients' and employees' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

    c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

    d. To employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class Members pursuant to HIPAA, the FTCA and California Consumer Privacy Act;

    e. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

    f. To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

133. Defendant's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . .

practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

134. Defendant's duty also arose because Defendant was bound by industry standards to protect its patients' and employees' confidential Private Information.

135. Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and Defendant owed them a duty of care to not subject them to an unreasonable risk of harm.

136. Upon information and belief, Defendant, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within Defendant's possession.

137. Upon information and belief, Defendant, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

138. Upon information and belief, Defendant, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

139. Upon information and belief, Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

    a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

    b. Failing to adequately monitor the security of their networks and systems;

    c. Failing to periodically ensure that their email system maintained reasonable data security safeguards;

CLASS ACTION COMPLAINT

    d.   Allowing unauthorized access to Class Members' Private Information;

    e.   Failing to comply with the FTCA;

    f.   Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

    g.   Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

140. Upon information and belief, Defendant acted with reckless disregard for the rights of Plaintiff and Class Members by failing to provide prompt individual notice of the Data Breach such that Plaintiff and Class Members could take measures to protect themselves from damages caused by the fraudulent use of the Private Information compromised in the Data Breach.

141. Defendant had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust Defendant with their Private Information was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant had the ability to protect its systems (and the Private Information that it stored on them) from attack.

142. Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised, exfiltrated, and misused, as alleged herein.

143. Defendant's breach of duty also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, loss of control over their Private Information.

144. As a result of Defendant's negligence in breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which upon information and belief, is still in the possession of third parties, will be used for fraudulent purposes.

145. Defendant also had independent duties under state laws that required it to reasonably safeguard Plaintiff's and Class Members' Private Information and promptly notify them about the Data Breach.

31

146. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

147. The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

148. Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

149. In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

## COUNT II

### NEGLIGENCE *PER SE*

### (ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

150. Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

151. Pursuant to Section 5 of the FTCA, Defendant had a duty to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiff and Class Members.

152. Pursuant to HIPAA, 42 U.S.C. § 1302(d), *et seq.*, Defendant had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' Private Information.

153. Specifically, pursuant to HIPAA, Defendant had a duty to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without the use of a confidential process or key." *See* definition of "encryption" at 45 C.F.R. § 164.304.

154. Upon information and belief, Defendant breached its duties to Plaintiff and Class Members under the FTCA and HIPAA by failing to provide fair, reasonable, or adequate computer

CLASS ACTION COMPLAINT

systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

155. Specifically, Defendant breached its duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA, including but not limited to proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

156. The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect PII and PHI (such as the Private Information compromised in the Data Breach). The FTC rulings and publications described above, together with the industry-standard cybersecurity measures set forth herein, form part of the basis of Defendant's duty in this regard.

157. Upon information and belief, Defendant also violated the FTCA and HIPAA by failing to use reasonable measures to protect the Private Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

158. It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information, that the failure to reasonably protect and secure Plaintiff's and Class Members' Private Information in compliance with applicable laws would result in an unauthorized third-party gaining access to Defendant's networks, databases, and computers that stored Plaintiff's and Class Members' unencrypted Private Information.

159. Plaintiff and Class Members are within the class of persons that the FTCA and HIPAA are intended to protect and Defendant's failure to comply with both constitutes negligence *per se*.

160. Upon information and belief, Plaintiff's and Class Members' Private Information constitute personal property that was stolen due to Defendant's negligence, resulting in harm, injury, and damages to Plaintiff and Class Members.

161. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized

CLASS ACTION COMPLAINT

access of their Private Information, including but not limited to damages from the actual misuse of their Private Information and effort to mitigate the actual and potential impact of the Data Breach on their lives.

162.    Upon information and belief, as a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

163.    In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

**COUNT III**

**BREACH OF IMPLIED CONTRACT**

**(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)**

164.    Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

165.    Defendant provides medical services and employment to Plaintiff and Class Members. Plaintiff and Class Members formed an implied contract with Defendant regarding the provision of those services through their collective conduct, including by Plaintiff and Class Members paying for services and/or entrusting their valuable Private Information to Defendant in exchange for such services.

166.    Through Defendant's sale of services to Plaintiff and Class Members, it knew or should have known that it must protect Plaintiff's and Class Members' confidential Private Information in accordance with their policies, practices, and applicable law.

167.    As consideration, Plaintiff and Class Members paid money to Defendant and/or turned over valuable Private Information to Defendant. Accordingly, Plaintiff and Class Members bargained with Defendant to securely maintain and store their Private Information.

34

CLASS ACTION COMPLAINT

168. Defendant accepted payment and/or possession of Plaintiff's and Class Members' Private Information for the purpose of providing services to Plaintiff and Class Members.

169. In paying Defendant and/or providing their valuable Private Information to Defendant in exchange for Defendant's services, Plaintiff and Class Members intended and understood that Defendant would adequately safeguard the Private Information as part of those services.

170. Defendant's implied promises to Plaintiff and Class Members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of their employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; (7) complying with HIPAA standards to make sure that Plaintiff's and Class Members' PHI would remain protected; and (8) taking other steps to protect against foreseeable data breaches.

171. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of such an implied contract.

172. Had Defendant disclosed to Plaintiff and the Class that it did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and Class Members would not have provided their Private Information to Defendant.

173. As a provider of healthcare related services, Defendant recognized (or should have recognized) that Plaintiff's and Class Member's Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiff and the other Class Members.

174. Upon information and belief, Defendant violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class Members'

35

Private Information. Defendant further breached these implied contracts by failing to comply with its promise to abide by HIPAA.

175.    Additionally, Defendant breached the implied contracts with Plaintiff and Class Members by failing to ensure the confidentiality and integrity of electronic protected health information it created, received, maintained, and transmitted, in violation of 45 CFR 164.306(a)(1).

176.    Defendant also breached the implied contracts with Plaintiff and Class Members by failing to implement technical policies and procedures for electronic systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 CFR 164.312(a)(1).

177.    Defendant further breached the implied contracts with Plaintiff and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR 164.308(a)(1).

178.    Defendant further breached the implied contracts with Plaintiff and Class Members by failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii).

179.    Defendant further breached the implied contracts with Plaintiff and Class Members by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2).

180.    Defendant further breached the implied contracts with Plaintiff and Class Members by failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3).

181.    Defendant further breached the implied contracts with Plaintiff and Class Members by failing to ensure compliance with the HIPAA security standard rules by their workforce violations, in violation of 45 CFR 164.306(a)(94).

CLASS ACTION COMPLAINT

182.    Defendant further breached the implied contracts with Plaintiff and Class Members by impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq*.

183.    Defendant further breached the implied contracts with Plaintiff and Class Members by failing to design, implement, and enforce policies and procedures establishing physical administrative safeguards to reasonably safeguard protected health information, in violation of 45 CFR 164.530(c).

184.    Upon information and belief, Defendant further breached the implied contracts with Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' PHI.

185.    A meeting of the minds occurred, as Plaintiff and Class Members agreed, *inter alia*, to provide payment and/or accurate and complete Private Information to Defendant in exchange for Defendant's agreement to, *inter alia*, provide services that included protection of their highly sensitive Private Information.

186.    Upon information and belief, Plaintiff and Class Members have been damaged by Defendant's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

## COUNT IV

### UNJUST ENRICHMENT

### (ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

187.    Plaintiff restates and realleges the allegations in the preceding paragraphs as if fully set forth herein.

188.    This Count is pleaded in the alternative to Count III.

189.    Plaintiff and Class Members conferred a benefit on Defendant by turning over their Private Information to Defendant and by paying for products and services that should have included cybersecurity protection to protect their Private Information. Plaintiff and Class Members did not receive such protection.

190.    Upon information and belief, Defendant funds its data security measures entirely from their general revenue, including from payments made to it by Plaintiff and Class Members.

191.    As such, a portion of the payments made by Plaintiff and Class Members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

192.    Defendant has retained the benefits of their unlawful conduct, including the amounts of payment received from Plaintiff and Class Members that should have been used for adequate cybersecurity practices that it failed to provide.

193.    Upon information and belief, Defendant knew that Plaintiff and Class Members conferred a benefit upon it, which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiff's and Class Members' Private Information and prevented the Data Breach.

194.    If Plaintiff and Class Members had known that Defendant had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendant.

195.    Due to Defendant's conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendant to be permitted to retain the benefit of their wrongful conduct.

196.    Upon information and belief, as a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered, and/or are at a continued, imminent risk of suffering, injury that includes but is not limited to the following: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach,

CLASS ACTION COMPLAINT

including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

197. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

198. Plaintiff and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Class described above, seek the following relief:

    a.    An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Nationwide Class and California Subclass requested herein;

    b.    Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

    c.    An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d. An order instructing Defendant to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e. An order requiring Defendant to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g. An award of such other and further relief as this Court may deem just and proper.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

DATED: March 23, 2026                    Respectfully submitted,

*/s/ Catherine Ybarra*
Catherine Ybarra (SBN 283360)
**SIRI & GLIMSTAD LLP**
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Tel: 213-297-3807
E:  cybarra@sirillp.com

Tyler J. Bean
(*pro hac vice* forthcoming)
Tanner R. Hilton
(*pro hac vice* forthcoming)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: tbean@sirillp.com
E: thilton@sirillp.com
E: cybarra@sirillp.com

Philip J. Krzeski
(*pro hac vice* forthcoming)
Bryan L. Bleichner
(*pro hac vice* forthcoming)
**CHESTNUT CAMBRONNE PA**
100 Washington Ave S UNIT 1700
Minneapolis, Minneosta 55401

40

Tel: (612) 339-7300
E: pkrzeski@chestnutcambronne.com
E: bbleichner@chestnutcambronne.com

***Counsel for Plaintiff and the Putative Class***

CLASS ACTION COMPLAINT